Hillsborough,
No. 4663.

STERGIANI LAZAROU *& a.*

*v.*

PANTILLY MORAROS *& a.*

Argued June 4, 1958.

Decided July 1, 1958.

384

*George S. Pappagianis* (by brief and orally), for the plaintiffs and *pro se*, as *guardian ad litem*, for all defendants except Pantilly Moraros.

*Nicholas Pantelas* (by brief and orally), for Pantilly Moraros.

LAMPRON, J. At common law aliens were incapable of taking real estate by descent. Although the right may be conferred by statute, RSA 477:20 "is not capable of construction which would permit a non-resident alien to 'take . . . real estate.'" *Hanafin* v. *McCarthy*, 95 N. H. 36, 37. It becomes necessary therefore to consider the terms of any treaty between the United States and Greece to see if such a right might be conferred thereby on non-resident Greek aliens.

There was a "Treaty of Establishment between the United States of America and the Kingdom of Greece" signed November 21, 1936, and after the necessary ratifications proclaimed on October 26, 1937. 51 Stat. 230 (1937). Treaties are to be construed as other contracts according to the intention of the parties and so as to carry out their manifest intent. *Hidalgo County Water Control & Imp. Dist.* v. *Hedrick*, 226 F. 2d 1, 7 (5th Cir. 1955).

The manifest intent of the contracting parties to the above

treaty is declared in its preamble to be a desire to prescribe the conditions under which the nationals, corporations and associations of each country may settle and carry on business in the other country. The preamble though not a part of the treaty, may be considered in construing the intent of the parties. 87 C. J. S., Treaties, *s. 13, p. 937.*

The privileges granted by it are that "The nationals, limited liability and other corporations and associations of the United States of America and Greece respectively, shall receive in the territories of the other country treatment with respect to entry, establishment and residence which shall be, in all respects, no less favorable than the treatment which is or shall be accorded to nationals, corporations or associations of the most favored third country." Art. I.

It has been given as the opinion of the State Department that "There was not in force on July 12, 1954, any treaty containing provisions relating specifically to the inheritance of or succession to property." Also that "The primary consideration in negotiating the treaty appears to have been the securing of certain commercial privileges for nationals and corporations of one country in the territories of the other country." The construction placed on a treaty by the governmental agency charged with the supervision of foreign relations is entitled to great weight in arriving at its interpretation. *United States* v. *Reid,* 73 F. 2d. 153 (9th Cir. 1934).

In the light of its preamble, its wording and the construction placed on it by the State Department we are of the opinion that the parties to the treaty signed November 21, 1936 (51 Stat. 230 (1937)) did not intend it to deal with rights of inheritance and that it did not confer on nonresident Greek aliens the right to inherit real estate in the United States.

This treaty was superseded by a "Treaty of Friendship, Commerce and Navigation between the United States of America and Greece." TIAS 3057; 5 U. S. T. 1829. By its terms this treaty "shall enter into force one month after the day of exchange of ratifications." Art. XXVIII. Such exchange having occurred on September 13, 1954, the treaty became effective October 13, 1954.

As between the parties a treaty takes effect, in the absence of any provisions to the contrary, from the time it is signed and subsequent ratification relates back to that time. However it has long been the law that with respect to individual rights a different rule prevails and the treaty is considered as taking effect only from

the time it has been finally concluded. *Haver* v. *Yaker,* 9 Wall. 32; *Ex Parte Ortiz,* 100 Fed. 955, 962 (Cir. Minn. 3rd Div. 1900); Crandall, Treaties, Their Making and Enforcement (2nd *ed.*) *s.* 155; See *Welander* v. *Hoyt,* 188 Iowa 972; *Cf. Techt* v. *Hughes,* 229 N. Y. 222; *Estate of Nepogodin,* 134 Cal. App. (2d) 161, 165.

Under our law the date of death controls the existence of the right to succession to the real estate of a decedent. *Wentworth* v. *Wentworth,* 75 N. H. 547, 550. On July 12, 1954, the date of death of Michael D. Moraros, all of the parties to this action, except Pantilly, were nonresident Greek aliens. As such they could not inherit real estate at common law nor by statute of this state. The 1936 treaty did not grant them the right of inheritance and the 1954 treaty had not yet become effective. Pantilly therefore became the sole owner of the real estate in question and the order on the petition must be

*Petition dismissed.*

All concurred.